J-S09042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JASON C. SHAUF | : | |
| | : | |
| Appellant | : | No. 1160 MDA 2017 |

Appeal from the PCRA Order June 23, 2017
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000007-2013

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED OCTOBER 16, 2018**

Appellant, Jason C. Shauf, appeals from the order entered in the Franklin County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinions, the PCRA court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> (1)  WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF PRE-TRIAL COUNSEL WHERE PRE-TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS APPELLANT'S STATEMENT TO THE POLICE ON THE BASIS THAT

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

\*   Retired Senior Judge assigned to the Superior Court.

APPELLANT DID NOT MAKE A KNOWING AND INTELLIGENT WAIVER OF HIS **MIRANDA**[2] RIGHTS?

(2)   WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF PRE-TRIAL COUNSEL WHERE PRE-TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS APPELLANT'S STATEMENT TO THE POLICE ON THE BASIS THAT APPELLANT HAD BEEN ARRESTED WITHOUT PROBABLE CAUSE AT THE TIME THE STATEMENT WAS MADE?

(3)   WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF PRE-TRIAL COUNSEL WHERE PRE-TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS THE SEARCH WARRANT FOR APPELLANT'S HOME AND VEHICLE ON THE BASIS THAT (1) THERE WAS NO NEXUS BETWEEN THE HOMICIDE THE POLICE WERE INVESTIGATING AND THE PLACES TO BE SEARCHED AND (2) IT FAILED TO DISCLOSE FACTS BEARING ON THE UNRELIABILITY OF THE IDENTIFICATION OF APPELLANT?

(4)   WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF PRE-TRIAL COUNSEL WHERE PRE-TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS A WITNESS IDENTIFICATION THAT WAS BASED ON AN OVERLY SUGGESTIVE PHOTO ARRAY?

(5)   WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF A VIOLATION OF HIS RIGHT TO TRIAL BY AN IMPARTIAL JURY UNDER BOTH THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS WHERE JUROR #2 WAS PRESUMED BIASED AND THEREFORE THE JURY WAS NOT IMPARTIAL?

(6)   WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO REQUEST THAT A BIASED JUROR BE STRICKEN FROM THE

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

JURY FOR CAUSE?

(7) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER CHARACTER TESTIMONY DESCRIBING APPELLANT AS VIOLENT?

(8) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL INTENTIONALLY ELICITED TESTIMONY SUGGESTING THAT APPELLANT HAD A PROPENSITY FOR VIOLENCE, INCLUDING TESTIMONY THAT APPELLANT HAD A PROTECTION FROM ABUSE ORDER ENTERED AGAINST HIM WHERE NO SUCH ORDER EXISTED?

(9) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO IRRELEVANT AND INADMISSIBLE TESTIMONY ABOUT APPELLANT'S PAST DRUG USE?

(10) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE ADMISSION OF PHOTOGRAPHS OF THE HOMICIDE VICTIM WHILE HE WAS STILL LIVING AND THE USE OF THOSE PHOTOGRAPHS IN THE COMMONWEALTH'S CLOSING ARGUMENT WHERE THE PHOTOGRAPHS WERE NOT RELEVANT AND INTRODUCED FOR THE PURPOSE OF ENGENDERING SYMPATHY FOR THE VICTIM?

(11) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO VICTIM-IMPACT TESTIMONY DURING THE GUILT PHASE OF APPELLANT'S TRIAL?

(12) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO TESTIMONY FROM MULTIPLE POLICE DETECTIVES OFFERING A PERSONAL OPINION AS TO THE

TRUTHFULNESS AND VERACITY OF APPELLANT'S STATEMENT TO POLICE?

(13) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO NUMEROUS HEARSAY STATEMENTS THROUGHOUT THE TRIAL, INCLUDING AN OUT-OF-COURT IDENTIFICATION OF APPELLANT BY AN INDIVIDUAL WHO DID NOT IDENTIFY APPELLANT AT TRIAL?

(14) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO MULTIPLE STATEMENTS IN THE DISTRICT ATTORNEY'S CLOSING ARGUMENT DESIGNED TO APPEAL TO THE EMOTIONS OF THE JURY RATHER THAN SUGGESTING A DISPASSIONATE REVIEW OF THE FACTS OF THE CASE?

(15) WHETHER THE PCRA COURT ERRED BY DENYING APPELLANT'S PCRA CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WHERE THE PERFORMANCE OF PRE-TRIAL COUNSEL AND TRIAL COUNSEL, WHEN VIEWED *IN TOTO*, INCLUDING THE NUMBER OF ERRORS OR FAILURES TO ACT, PREJUDICED APPELLANT?

(Appellant's Brief at 4-6).[3]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Carol L. Van Horn, we conclude Appellant's issues merit no relief. The PCRA court opinions comprehensively discuss and properly dispose of the questions presented. (**See** Opinion in Support of Order Denying PCRA Relief, filed June 23, 2017, at 9-70) (finding: **(1)** (pp. 12-16) pre-trial counsel testified

_____

[3] For purposes of disposition, we have re-ordered some of Appellant's issues.

- 4 -

Appellant's statement to police was more helpful than harmful; if Appellant decided not to testify at trial, counsel wanted to be able to produce statement so jury could hear Appellant's version of events; other evidence besides Appellant's statement placed Appellant at crime scene; Appellant's statement also showed his cooperation with police; counsel had reasonable basis for his actions; **(2)** (pp. 16-20) one victim/witness identified Appellant as perpetrator and someone that victim/witness had seen before; other victims/witnesses gave physical descriptions of one of perpetrators, which matched Appellant's characteristics; police had probable cause to arrest Appellant, so his claim lacks arguable merit; **(3)** (pp. 20-25) search warrant indicated that one of victims/witnesses identified Appellant as perpetrator; search warrant also stated Appellant's neighbor reported seeing Appellant and his cohort at Appellant's residence on day after murder; information contained in search warrant created sufficient nexus between homicide and places to be searched; Appellant's claim lacks arguable merit; **(4)** (pp. 25-28) police showed victim/witness, who ultimately identified Appellant, two sets of photo arrays; victim/witness did not identify Appellant in first photo array even though Appellant was in that picture; later on same day, police showed witness second photo array containing more recent picture of Appellant, and victim/witness was able to identify Appellant as one of perpetrators; pre-trial counsel testified he could not even identify Appellant from first photo array because photo in that spread did not have clear

likeness to Appellant; in any event, counsel said he did not plan to contest Appellant's presence at scene, as part of trial strategy; photo array was not unduly suggestive, and Appellant's claim lacks arguable merit; **(5-6)** (pp. 28-31; 68-70) prior to opening arguments, juror #2 informed court she remembered Appellant because she had hired him for roofing job that Appellant did not complete; following questioning from court, juror confirmed she "harbor[ed] no ill feelings" toward Appellant and could be fair and impartial; Appellant failed to show that removal of juror #2 was constitutionally required, where juror confirmed she could be fair and impartial; Appellant's related ineffectiveness claim lacks arguable merit; **(7)** (pp. 31-34) through trial counsel's questioning of Appellant's former girlfriend on cross-examination about whether she knew Appellant to have guns, defense counsel opened door for Commonwealth to pursue on re-direct questions related to Appellant's character/propensity for violence;[4] thus, trial counsel was not ineffective for failing to object to Commonwealth's question on re-direct; moreover, trial counsel testified that part of trial strategy was to show Appellant was known to use his fists in altercations, not guns; counsel had reasonable basis for not objecting to

---

[4] Appellant now complains trial counsel was ineffective for "opening the door" to the line of questioning about guns. Nevertheless, Appellant did not specify this claim in his PCRA petition, so it is waived. **See Commonwealth v. Washington**, 592 Pa. 698, 927 A.2d 586 (2007) (explaining general rule that any claim not raised in PCRA petition is waived on appeal).

Commonwealth's inquiry on re-direct; **(8)** (pp. 34-36) at PCRA hearing, trial counsel explained it was important to offer jury reason for why Appellant parked his truck away from residence where murder took place; counsel elicited testimony that Appellant did not park his vehicle on that street because protection from abuse ("PFA") order precluded Appellant from parking there;[5] apparently, PFA order did not exist; nevertheless, counsel had reasonable basis for his trial strategy; **(9)** (pp. 37-40) trial counsel testified he did not object to testimony about Appellant's drug use because it was not significant enough to warrant objection, counsel generally declines to object to matters which do not harm defense trial strategy, and incessant objections draw more attention to subject of objection; counsel had reasonable basis for his actions; **(10)** (pp. 40-45) Commonwealth presented substantial evidence of Appellant's guilt, and Appellant cannot show prejudice from counsel's failure to object to pictures of murder Victim presented at trial; **(11)** (pp. 46-52) Appellant fails to demonstrate that challenged testimony constitutes "victim impact testimony"; moreover, counsel testified that defense strategy was Appellant's cohort killed Victim, and to interrupt flow of trial to object during testimony about Victim would not have aided Appellant's trial strategy; further, Appellant makes only

---

[5] Trial counsel testified that Appellant told him there was a PFA order in effect which had precluded him from parking on the street where the murder occurred.

boilerplate prejudice allegations regarding this ineffectiveness claim, which do not afford him relief; **(12)** (pp. 52-58) Commonwealth elicited testimony concerning two detectives' perceptions of Appellant's credibility, which was improper; nevertheless, detectives' testimony focused on investigative process and challenged testimony consists of fleeting statements in context of eight-day trial; Appellant cannot show prejudice; **(13)** (pp. 58-63) challenged statements were not offered for truth of matter asserted but to explain detective's investigation process; Appellant's ineffectiveness claim lacks arguable merit; **(14)** (pp. 63-68) prosecutor's closing argument did not exceed passionate rhetoric; moreover, trial counsel testified he did not object because court instructs jury that arguments by counsel are not evidence, and jurors' recollection of facts/evidence controls; counsel had reasonable basis for his actions). (**See** Rule 1925(a) Opinion, filed August 22, 2017, at 10-12)[6] (finding: **(15)** given PCRA court's disposition of Appellant's individual ineffectiveness of counsel claims, Appellant's bald averment of "cumulative prejudice" does not merit relief). Accordingly, we affirm on the basis of the PCRA court's opinions.

Order affirmed.

---

[6] We add to the court's recitation of the scope and standard of review that if the record supports a post-conviction court's credibility determination, it is binding on the appellate court. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297 (2011).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/16/2018</u>

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| v. | : | Case No. 7-2013 |
| | : | |
| Jason C. Shauf, | : | PCRA |
| Petitioner | : | |
| | : | The Honorable Carol L. Van Horn |

## OPINION *sur* PA. R.A.P. 1925(a) AND ORDER OF COURT

Filed    **AUG 2 2 2017**

*Nancy Marshall*
   Clerk

**Before Van Horn, P.J.**

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| v. | : | Case No. 7-2013 |
| | : | |
| Jason C. Shauf, | : | PCRA |
| Petitioner | : | |
| | : | The Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

On December 17, 2014, a jury found the above-captioned Petitioner, Jason C. Shauf ("Petitioner"), guilty of various charges including Second Degree Murder,[1] Burglary,[2] six (6) counts of Robbery,[3] ten (10) counts of Kidnapping,[4] five (5) counts of Unlawful Restraint,[5] Criminal Conspiracy to Robbery,[6] and Criminal Conspiracy to Burglary.[7] Petitioner was represented in the pretrial process by Attorney Mark Bayley, and by Attorney Shane Kope at trial. On January 7, 2015, the Petitioner was sentenced to life in prison in addition to an aggregate term of 42 to 84 years. Petitioner filed a timely Post-Sentence Motion on January 20, 2015. A hearing was originally

---

[1] 18 Pa.C.S. § 2502(b).
[2] 18 Pa.C.S. § 3502(c)(1).
[3] 18 Pa.C.S. § 3701(a)(1)(i)-(iii).
[4] 18 Pa.C.S. § 2901(a)(2), (3).
[5] 18 Pa.C.S. § 2902(a)(1).
[6] 18 Pa.C.S. § 903 to 18 Pa. C.S. § 3701(a)(1)(i).
[7] 18 Pa.C.S. § 903 to 18 Pa. C.S. § 3502(a)(1).

scheduled before the Petitioner requested that the Motion be decided on briefs alone. Petitioner filed his Brief in Support on February 20, 2015. The Commonwealth filed its Brief in Opposition on March 17, 2015.

An April 13, 2015 Opinion and Order by this Court denied the Defendant's Post-Sentence Motion. That same day, this Court granted Petitioner's previous counsel's Motion to Withdraw. The Petitioner was subsequently appointed legal representation through the Franklin County Public Defender's Office. On May 7, 2015, the Franklin County Public Defender's Office filed a Motion for Appointment of Counsel Because of Conflict of Interest. This Court granted the Motion and subsequently appointed Jens C. Wagner to represent the Petitioner on appeal. On June 11, 2015, the Petitioner filed a Notice of Appeal and this Court issued its Concise Statement Order.[8] On July 2, 2015, Petitioner filed his Concise Statement of Matters Complained of on Appeal. On July 17, 2015, this Court responded to Petitioner's Concise Statement, and transmitted the Record to the Superior Court. On November 5, 2015, upon consideration of an application to discontinue appeal, the Superior Court entered an Order discontinuing Petitioner's appeal.

---

[8] The Court notes that the Petitioner attempted to file a *pro se* Notice of Appeal through a letter he filed on May 11, 2015. Given the confusion surrounding his legal representation after his trial counsel who filed his Post-Sentence Motion withdrew, this Court finds it proper to consider his actual Notice of Appeal filed on June 11, 2015, timely.

3

On February 29, 2016, Petitioner filed a pro se Motion for Post-Conviction Collateral Relief. On March 1, 2016, the Court appointed Attorney Nathaniel Spang as counsel for Petitioner. Counsel for Petitioner then filed an Amended Petition for Post-Conviction Collateral Relief on June 27, 2016. Subsequently, an evidentiary hearing was held before this Court on November 17, 2016. Following the hearing, this Court directed both parties to file briefs. On February 28, 2017, Petitioner filed his Brief in Support of Previously Filed Amended PCRA Petition. The Commonwealth filed its Brief on February 28, 2017.

On June 23, 2017, this Court issued an Opinion and Order denying Appellant's requested relief and dismissing his PCRA Petition. Appellant filed a timely Notice of Appeal on July 20, 2017. On July 21, 2017, this Court ordered the Appellant file a Concise Statement of Matters Complained of on Appeal. Appellant filed his Concise Statement on August 9, 2017. This Court will now respond to Petitioner's claims of error in this Opinion and Order of Court pursuant to Pa.R.A.P. 1925(a).

## BACKGROUND

On October 22, 2012, a murder occurred at 310 East King Street, Chambersburg, Pennsylvania. Numerous individuals lived in the residence and were present at the time of the incident including Juan Miguel Herrera Marquez, Genaro Gonzalez Chavez, Arturo Rubio Perez, Victor Campos Olguin (Hugo), and

4

Jose Trinidad Sanchez Herrea. Two other individuals, one named Sergio and another named Ignacio, lived in the residence but were not present on the night in question. Additionally, another individual, Augustin Macias Marquez, did not live in the residence but was present on the night the murder occurred.

At roughly 9:30 p.m. on that evening, two individuals forced their way into 310 East King Street brandishing firearms. The first individual, Carl Varner, wielded a .22 Magnum Rohm single action revolver. The other individual, the Petitioner, displayed a H. Coon .410 snake charmer shotgun. The two suspects began yelling and demanded to see an individual named "El Gallo." It is important to note that the six victims present spoke Spanish and almost no English. Upon observing the two suspects enter the residence Juan bolted into a nearby bedroom and hid in the closet. Genaro and Augustin, who were also downstairs at the time the suspects entered, were forced upstairs at gunpoint. They were subsequently separated into different bedrooms. Genaro was forced into a bedroom in which Arturo was already present. Petitioner then found Jose in the bathroom preparing to take a shower and placed him in that bedroom as well. At this point, the Petitioner took money from Arturo at gunpoint and continued to demand to see "El Gallo." When his demands went unfulfilled, the Petitioner fired a shot into the ceiling and then reloaded his shotgun.

5

Meanwhile Carl Varner had forced Augustin into the other bedroom in which Hugo was already located. He then proceeded to rob the two at gunpoint. Next, Varner led Hugo and Augustin down the hallway before knocking Augustin to the floor. Varner then placed his .22 caliber revolver by Hugo's neck and fired. As a result, Hugo stumbled into the bathroom, fell into the bathtub and later died from his injury. Following the shot, both suspects fled the scene. Police were then called and an initial investigation was conducted. Police were able to identify the Petitioner and Carl Varner as suspects and they were later arrested. Following a properly executed search warrant, both the .22 revolver and .410 snake charmer shotgun were found wrapped in a bandana in Varner's basement. An empty box of .410 snake charmer shotguns shells were found in the Petitioner's truck.

At trial, Petitioner admitted that he did accompany Varner to 310 East King Street that night. However, the Petitioner argued that he had no idea that the Petitioner intended to rob and murder anyone. Instead, the Petitioner claimed he believed they were simply going to the residence to pick up money that was owed to Varner. Petitioner also testified that Varner brandished both the .22 revolver and the .410 snake charmer shotgun and that he only brought a stick he found on the ground for protection. Most importantly, Petitioner testified that at no time did he go upstairs with Varner and that he simply stayed downstairs with his stick. Petitioner testified that following the shots he fled with Varner and drove home.

6

Unconvinced, the jury convicted the Petitioner on all counts including Second Degree Murder.

## ISSUES:

In his Concise Statement, Appellant questions whether this Court erred in denying the ineffective assistance of counsel claim brought before it in Appellant's PCRA Petition. Specifically, Appellant raises the following issues:

I.  Whether the Trial Court erred in denying relief on claim that Petitioner's Constitutional right to an unbiased jury was violated because Juror Number 2 was presumably biased against Petitioner.

II. Whether the Trial Court erred in denying relief on claim that pre-trial counsel's failed to file a Motion to Suppress Petitioner's Statement to the police on the basis that he did not make a knowing and intelligent waiver of his *Miranda* rights.

III. Whether the Trial Court erred in denying relief on claim that pre-trial counsel's failed to file a Motion to Suppress Petitioner's statement to the police on the basis that Petitioner had been arrested without probable cause at the time he made the statement.

IV. Whether the Trial Court erred in denying relief on claim that pre-trial counsel's failed to file a Motion to Suppress the search warrant for Petitioner's home and vehicle on the basis that (1) it failed to provide a

7

nexus between the homicide the police were investigating and the places to be searched and (2) it failed to disclose facts bearing on the unreliability of the identification of Petitioner.

V. Whether the Trial Court erred in denying relief on claim that pre-trial counsel's failed to file a Motion to Suppress a witness identification based on an overly suggestive photo array.

VI. Whether the Trial Court erred in denying relief on claim that trial counsel's failed to move that Juror Number 2 be stricken for cause.

VII. Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to improper character testimony describing Petitioner as violent.

VIII. Whether the Trial Court erred in denying relief on claim that trial counsel's decision to elicit testimony suggesting Petitioner had a propensity for violence, including testimony that Petitioner had a Protection from Abuse ("PFA") entered against him where no such order existed.

IX. Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to irrelevant and inadmissible testimony about Petitioner's past drug use.

8

X.    Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to the admission of photographs of the homicide victim while he was still living and the use of those photographs in the Commonwealth's closing argument where the photographs were not relevant and introduced for the purpose of engendering sympathy for the victim.

XI.   Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to victim-impact testimony during the guilt phase of the trial.

XII.  Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to testimony from multiple police detectives offering a personal opinion as to the truthfulness and veracity of Petitioner's statement.

XIII. Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to numerous hearsay statements throughout the trial, including an out-of-court identification of Petitioner by an individual who did not identify Petitioner at trial.

XIV.  Whether the Trial Court erred in denying relief on claim that trial counsel's failed to object to multiple statements in the District Attorney's

closing argument designed to appeal to the emotions of the jury rather than suggesting a dispassionate review of the facts of the case.

XV. Whether the Trial Court erred in denying relief on Petitioner's PCRA claim of ineffective assistance of counsel where the performance of pre-trial counsel and trial counsel, when viewed *in toto*, including the number of errors or failures to act, prejudiced Petitioner. [9]

## STANDARD OF REVIEW

Our appellate courts review an order dismissing a petition filed under the PCRA to determine whether the decision "of the PCRA court is supported by evidence of record and is free of legal error." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (citations omitted). The "scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Id.* The decision of the PCRA court may be affirmed "on any grounds if it is supported by the record." *Id.* In the case of a purely legal question, the standard of review is *de novo*, and the scope of review is plenary. *See Commonwealth v. Patton*, 985 A.2d 1283, 1286 (Pa. 2009).

---

[9] Concise Statement of Matters Complained of on Appeal, August 9, 2017.

## DISCUSSION

All but one of the issues raised by Appellant mirror the issues raised in his PCRA Petition, and addressed by this Court in our June 23, 2017 Opinion and Order of Court which is attached. Accordingly, this Court declines to address those issues previously raised again here, and we refer the Superior Court to the reasoned analysis set forth in our previous Opinion.

In his Concise Statement, the sole new issued raised by Petitioner is as follows:

> Whether the Trial Court erred in denying relief on Petitioner's PCRA claim of ineffective assistance of counsel where the performance of pre-trial counsel and trial counsel, when viewed *in toto*, including the number of errors or failures to act, prejudiced Petitioner.

(Concise Statement, at 2). Petitioner, therefore, contends that the cumulative effect of counsel's errors deprived him of his Sixth Amendment right to effective assistance of counsel. Like Petitioner, in *Commonwealth v. Hutchinson*, the appellant argued that the cumulative errors of counsel deprived him of due process. *Commonwealth v. Hutchinson*, 25 A.3d 277, 318 (Pa. 2011). The Pennsylvania Supreme Court has provided that "[W]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulative requires a different analysis." *Id.* at 318-19 (quoting *Commonwealth v. Wright*, 961 A.2d 119, 158

11

(Pa. 2008)). "Although cumulative prejudice from individual claims may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim." *Hutchinson*, 25 A.3d at 319. The Pennsylvania Supreme Court explained that "In its entirety, [the appellant's] claim comprises [a basis recital of appellant's previously raised claims], no [persuasive] citations to authority or to the record, no specifics, and no argument." *Id.* at 318. In the instant case, Petitioner fails to provide a "specific, reasoned, and legally and factually supported" argument. *Hutchinson*, 25 A.3d at 319. Instead, Petitioner merely offers a "bald averment of cumulative prejudice". *Id.* For these reasons, Petitioner's instant claim of cumulative prejudice is meritless.

Ultimately, the Court finds the Appellant's ineffective assistance of counsel claims to be without merit, and respectfully requests that the Superior Court affirm our June 23, 2017 Order dismissing Appellant's claims.

12

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| v. | : | Case No. 7-2013 |
| | : | |
| Jason C. Shauf, | : | PCRA |
| Petitioner | : | |
| | : | The Honorable Carol L. Van Horn |

## ORDER OF COURT

AND NOW THIS *22nd* DAY OF August, 2017, pursuant to Pa. R.A.P. 1931(c),

**IT IS HEREBY ORDERED THAT** the Clerk of Courts of Franklin County shall promptly transmit to the Prothonotary of the Superior Court the record in this matter along with the attached Opinion *sur* Pa. R.A.P. 1925(a).

*Pursuant to Pa. R. Crim. P. 114, the Clerk of Courts shall immediately docket this Opinion and Order of Court and record in the docket the date it was made. The Clerk shall forthwith furnish a copy of the Opinion and Order of Court, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.*

By the Court,

_Carol L. Van Horn_
Carol L. Van Horn, P.J.

copies:
Franklin County District Attorney's Office
Nathaniel F. Spang, Esq., Counsel for Appellant

13

Aug. 22, 2017, served a copy of the **OPINION & ORDER OF COURT** dated Aug. 22, 2017 signed by Judge Van Horn filed Aug. 22, 2017, by placing a copy of the same in the **Inter Office Mail** to the following,

District Attorney
Nathaniel F. Spang, Esq.

Deputy Clerk

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| v. | : | Case No. 7-2013 ✓ |
| | : | |
| Jason C. Shauf, | : | PCRA |
| Petitioner | : | |
| | : | The Honorable Carol L. Van Horn |

## OPINION AND ORDER OF COURT

Filed    **JUN 2 3 2017**

_Nancy Marshall_
Clerk

**Before Van Horn, P.J.**

152

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action |
| | : | |
| v. | : | Case No. 7-2013 |
| | : | |
| Jason C. Shauf, | : | PCRA |
| Petitioner | : | |
| | : | The Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

On December 17, 2014, a jury found the above-captioned Petitioner, Jason C. Shauf ("Petitioner"), guilty of various charges including Second Degree Murder,[1] Burglary,[2] six (6) counts of Robbery,[3] ten (10) counts of Kidnapping,[4] five (5) counts of Unlawful Restraint,[5] Criminal Conspiracy to Robbery,[6] and Criminal Conspiracy to Burglary.[7] Petitioner was represented in the pretrial process by Attorney Mark Bayley, and by Attorney Shane Kope at trial. On January 7, 2015, the Petitioner was sentenced to life in prison in addition to an aggregate term of 42 to 84 years. Petitioner filed a timely Post-Sentence Motion on January 20, 2015. A hearing was originally

---

[1] 18 Pa.C.S. § 2502(b).
[2] 18 Pa.C.S. § 3502(c)(1).
[3] 18 Pa.C.S. § 3701(a)(1)(i)-(iii).
[4] 18 Pa.C.S. § 2901(a)(2), (3).
[5] 18 Pa.C.S. § 2902(a)(1).
[6] 18 Pa.C.S. § 903 to 18 Pa. C.S. § 3701(a)(1)(i).
[7] 18 Pa.C.S. § 903 to 18 Pa. C.S. § 3502(a)(1).

scheduled before the Petitioner requested that the Motion be decided on briefs alone. Petitioner filed his Brief in Support on February 20, 2015. The Commonwealth filed its Brief in Opposition on March 17, 2015.

An April 13, 2015 Opinion and Order by this Court denied the Defendant's Post-Sentence Motion. That same day, this Court granted Petitioner's previous counsel's Motion to Withdraw. The Petitioner was subsequently appointed legal representation through the Franklin County Public Defender's Office. On May 7, 2015, the Franklin County Public Defender's Office filed a Motion for Appointment of Counsel Because of Conflict of Interest. This Court granted the Motion and subsequently appointed Jens C. Wagner to represent the Petitioner on appeal. On June 11, 2015, the Petitioner filed a Notice of Appeal and this Court issued its Concise Statement Order.[8] On July 2, 2015, Petitioner filed his Concise Statement of Matters Complained of on Appeal. On July 17, 2015, this Court responded to Petitioner's Concise Statement, and transmitted the Record to the Superior Court. On November 5, 2015, upon consideration of an application to discontinue appeal, the Superior Court entered an Order discontinuing Petitioner's appeal.

---

[8] The Court notes that the Petitioner attempted to file a *pro se* Notice of Appeal through a letter he filed on May 11, 2015. Given the confusion surrounding his legal representation after his trial counsel who filed his Post-Sentence Motion withdrew, this Court finds it proper to consider his actual Notice of Appeal filed on June 11, 2015, timely.

3

On February 29, 2016, Petitioner filed a pro se Motion for Post-Conviction Collateral Relief. On March 1, 2016, the Court appointed Attorney Nathaniel Spang as counsel for Petitioner. Counsel for Petitioner then filed an Amended Petition for Post-Conviction Collateral Relief on June 27, 2016. Subsequently, an evidentiary hearing was held before this Court on November 17, 2016. Following the hearing, this Court directed both parties to file briefs. On February 28, 2017, Petitioner filed his Brief in Support of Previously Filed Amended PCRA Petition. The Commonwealth filed its Brief on February 28, 2017. The issue is now ripe for decision in this Opinion and Order of Court.

## BACKGROUND

On October 22, 2012, a murder occurred at 310 East King Street, Chambersburg, Pennsylvania. Numerous individuals lived in the residence and were present at the time of the incident including Juan Miguel Herrera Marquez, Genaro Gonzalez Chavez, Arturo Rubio Perez, Victor Campos Olguin (Hugo), and Jose Trinidad Sanchez Herrea. Two other individuals, one named Sergio and another named Ignacio, lived in the residence but were not present on the night in question. Additionally, another individual, Augustin Macias Marquez, did not live in the residence but was present on the night the murder occurred.

At roughly 9:30 p.m. on that evening, two individuals forced their way into 310 East King Street brandishing firearms. The first individual, Carl Varner,

4

wielded a .22 Magnum Rohm single action revolver. The other individual, the Petitioner, displayed a H. Coon .410 snake charmer shotgun. The two suspects began yelling and demanded to see an individual named "El Gallo." It is important to note that the six victims present spoke Spanish and almost no English. Upon observing the two suspects enter the residence Juan bolted into a nearby bedroom and hid in the closet. Genaro and Augustin, who were also downstairs at the time the suspects entered, were forced upstairs at gunpoint. They were subsequently separated into different bedrooms. Genaro was forced into a bedroom in which Arturo was already present. Petitioner then found Jose in the bathroom preparing to take a shower and placed him in that bedroom as well. At this point, the Petitioner took money from Arturo at gunpoint and continued to demand to see "El Gallo." When his demands went unfulfilled, the Petitioner fired a shot into the ceiling and then reloaded his shotgun.

Meanwhile Carl Varner had forced Augustin into the other bedroom in which Hugo was already located. He then proceeded to rob the two at gunpoint. Next, Varner led Hugo and Augustin down the hallway before knocking Augustin to the floor. Varner then placed his .22 caliber revolver by Hugo's neck and fired. As a result, Hugo stumbled into the bathroom, fell into the bathtub and later died from his injury. Following the shot, both suspects fled the scene. Police were then called and an initial investigation was conducted. Police were able to identify the

Petitioner and Carl Varner as suspects and they were later arrested. Following a properly executed search warrant, both the .22 revolver and .410 snake charmer shotgun were found wrapped in a bandana in Varner's basement. An empty box of .410 snake charmer shotguns shells were found in the Petitioner's truck.

At trial, Petitioner admitted that he did accompany Varner to 310 East King Street that night. However, the Petitioner argued that he had no idea that the Petitioner intended to rob and murder anyone. Instead, the Petitioner claimed he believed they were simply going to the residence to pick up money that was owed to Varner. Petitioner also testified that Varner brandished both the .22 revolver and the .410 snake charmer shotgun and that he only brought a stick he found on the ground for protection. Most importantly, Petitioner testified that at no time did he go upstairs with Varner and that he simply stayed downstairs with his stick. Petitioner testified that following the shots he fled with Varner and drove home. Unconvinced, the jury convicted the Petitioner on all counts including Second Degree Murder.

# ISSUES:

In the instant PCRA Petition, Petitioner raises several ineffective assistance of counsel claims against Attorney Mark Bayley and Attorney Shane Kope. Petitioner claims that Attorney Bayley was ineffective for the following reasons:

I.     Failure to file a Motion to Suppress Petitioner's Statement to the police on the basis that he did not make a knowing and intelligent waiver of his *Miranda* rights.

II.     Failure to file a Motion to Suppress Petitioner's statement to the police on the basis that Petitioner had been arrested without probable cause at the time he made the statement.

III.     Failure to file a Motion to Suppress the search warrant for Petitioner's home and vehicle on the basis that (1) it failed to provide a nexus between the homicide the police were investigating and the places to be searched and (2) it failed to disclose facts bearing on the unreliability of the identification of Petitioner.

IV.     Failure to file a Motion to Suppress a witness identification based on an overly suggestive photo array.

Petitioner claims that Attorney Kope was ineffective for the following reasons:

I.     Failure to move that Juror Number 2 be stricken for cause.

7

II.  Failure to object to improper character testimony describing Petitioner as violent.

III.  Trial counsel's decision to elicit testimony suggesting Petitioner had a propensity for violence, including testimony that Petitioner had a Protection from Abuse ("PFA") entered against him where no such order existed.

IV.  Failure to object to irrelevant and inadmissible testimony about Petitioner's past drug use.

V.  Failure to object to the admission of photographs of the homicide victim while he was still living and the use of those photographs in the Commonwealth's closing argument where the photographs were not relevant and introduced for the purpose of engendering sympathy for the victim.

VI.  Failure to object to victim-impact testimony during the guilt phase of the trial.

VII.  Failure to object to testimony from multiple police detectives offering a personal opinion as to the truthfulness and veracity of Petitioner's statement.

8

VIII. Failure to object to numerous hearsay statements throughout the trial, including an out-of-court identification of Petitioner by an individual who did not identify Petitioner at trial.

IX. Failure to object to multiple statements in the District Attorney's closing argument designed to appeal to the emotions of the jury rather than suggesting a dispassionate review of the facts of the case.

Petitioner also raises the following issue:

I. Petitioner's Constitutional right to an unbiased jury was violated because Juror Number 2 was presumably biased against Petitioner.[9]

## DISCUSSION

The Post Conviction Relief Act (PCRA) was enacted to provide individuals who are convicted of crimes for which they are innocent, or those serving illegal sentences, with a means to obtain collateral relief. *See* 42 Pa.C.S. § 9543. First, the petitioner must demonstrate he was convicted of a crime under the law of Pennsylvania, and that he is currently serving a sentence or waiting to do so. *See* 42 Pa. C.S. §9543(a)(1). Second, the petitioner must prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated statutory factors. *See* 42 Pa. C.S. §9543(a)(2). Third, a petitioner must demonstrate the issues raised under the Act have not been previously litigated

---

[9] Petitioner's PCRA Brief, February 28, 2017.

9

or waived, and finally, that the failure to litigate such issues could not have resulted from a rational, strategic, or tactical decision by counsel. *See id.* at §9543(a)(1), (3)-(4). "Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved." *Commonwealth v. Rivers,* 786 A.2d 923, 927 (Pa. 2001).

## I.      Claims for Ineffective Assistance of Counsel

Among the statutory factors from which a conviction or sentence may have resulted in creating an entitlement to post-conviction relief is the ineffective assistance of counsel. 42 Pa.C.S. §9543(a)(2)(ii). In light of the particular circumstances of a case, the ineffective assistance of counsel must have so undermined the truth-determining process that "no reliable adjudication of guilt or innocence could have taken place." *Id.*

The assistance of counsel is presumed effective. *See Commonwealth v. Martin,* 5 A.3d 177, 183 (Pa. 2010). Petitioner bears the burden of proving otherwise, accomplished by satisfying the three-pronged test laid out by our appellate courts in *Pierce. See Commonwealth v. Pierce,* 786 A.2d 203, 213 (Pa. 2001). As explained in *Pierce,* Petitioner must establish that the underlying claim of ineffectiveness has (1) arguable merit, (2) that counsel's act or omission had no

reasonable basis to advance the Petitioner's interests, and (3) that the Petitioner suffered actual prejudice due to the trial counsel's act or omission. *Id.* at 212.

Failure to satisfy any of the three prongs of the *Pierce* test will result in denial of the claimed ineffective assistance. *See Pierce,* 786 A.2d at 221-22. The inquiry mirrors that set forth by the United States Supreme Court, requiring both a showing that counsel's performance was deficient, and that such deficiency was prejudicial. *See Strickland v. Washington,* 466 U.S. 668, 687-91 (1984). Significantly, a Petitioner raising a claim of ineffectiveness must demonstrate actual prejudice—that is, "that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.'" *Commonwealth v. Charleston,* 94 A.3d 1012, 1019 (Pa.Super. 2014) (quoting *Pierce,* 527 A.2d at 977). The Pennsylvania Supreme Court has provided that "as a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." *Commonwealth v. Spotz,* 84A.3d 294, 315 (Pa. 2014) (citing *Commonwealth v. Gribble,* 863 A.2d 455, 472 (Pa. 2004)).

Pursuant to the above standards, this Court now analyzes each issue raised by the Petitioner in turn.

11

## A. Petitioner's Claims Regarding Attorney Bayley's Ineffectiveness

Attorney Bayley represented Petitioner from approximately June 20, 2013 to November 6, 2013, essentially from right before Mandatory Arraignment through the time that Attorney Shane Kope entered his appearance in November of 2013. All of the IAC allegations against Attorney Bayley are based on Attorney Bayley's decision not to file a Motion to Suppress on behalf of Petitioner.

### i. Failure to file a Motion to Suppress Petitioner's Statement to the police on the basis that he did not make a knowing and intelligent waiver of his *Miranda* rights.

In the instant case, Petitioner argues that Attorney Bayley was ineffective as a result of his failure to file a Motion to Suppress Petitioner's statement to the police on the basis that Petitioner did not make a knowing and intelligent waiver of his *Miranda* rights. (Petitioner's PCRA Brief, February 28, 2017, at 6).

### a. Arguable Merit

First, the defendant must show the underlying substantive claim has arguable merit. "Arguable merit exists when the factual statements are accurate and 'could establish cause for relief.'" *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015) (quoting *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013)). Counsel cannot be held ineffective for failing to raise a meritless claim or a non-existent theory. *See Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. Super. 2014); *Commonwealth v. Skurkis*, 348 A.2d 894, 896 (Pa. 1975).

12

In the suppression realm, the Pennsylvania Supreme Court has provided:

"[t]he failure to file a suppression motion may be evidence of ineffective assistance of counsel. However, if the grounds underpinning the suppression motion or objection are without merit, counsel will not be deemed to have been ineffective in failing to so move or object." *Commonwealth v. Ransome*, 402 A.2d 1379, 1381-82 (Pa. 1979).

Petitioner avers that this claim could establish cause for relief through his argument that he did not make a knowing and intelligent waiver of his *Miranda* rights. (Petitioner's PCRA Brief, at 7). Accordingly, the question of whether the instant claim has arguable merit rests on a determination of whether or not Petitioner's *Miranda* waiver was knowing and intelligent.

A *Miranda* waiver is only valid if it is done in a knowing and intelligent fashion. *Commonwealth v. Dixon*, 379 A.2d 553, 556 (Pa. 1977). The Pennsylvania Supreme Court has provided that a *Miranda* waiver is not "knowing and intelligent" unless the suspect has an awareness of the "general nature of the transaction giving rise to the investigation." *Id.*

At the PCRA hearing, Attorney Bayley was questioned regarding the applicability of *Commonwealth v. Dixon* on the Defendant's case. (T.P. PCRA Hearing, November 17, 2016, at 13). He indicated that while he was not aware of the *Dixon* case prior to the instant case, that when he did become aware of its

13

holding "[he] realized that there was an issue with regard to suppression and Mr. Shauf's statement that that had potential merit"; he also indicated that he "thought long and hard about whether or not a favorable suppression ruling would advance Mr. Shauf's cause." (*Id.*). Through this testimony, it appears that Attorney Bayley, and the Commonwealth in its Brief in Opposition to Defendant's Post Conviction Relief Act Petition by citing this testimony, concede that there were grounds upon which a suppression motion could have been made. Therefore, this Court finds that "the grounds underpinning the suppression motion" have merit. *See Ransome*, 402 A.2d at 1381-82. Petitioner therefore satisfies the first *Pierce* prong by demonstrating that this claim could establish cause for relief. *See Barnett*, 121 A.3d at 540.

## b. Reasonable Basis

While Petitioner's instant claim that counsel's failure to file a suppression motion constituted ineffective assistance of counsel has arguable merit, Petitioner's claim fails as trial counsel had a reasonable basis for his failure to file the motion. To succeed on an IAC claim, the Petitioner must demonstrate that counsel did not have any reasonable basis for their acts or failure to act designed to effectuate the client's interest. *See Pierce*, 786 A.2d at 213. "In considering whether counsel acted reasonably, we look to 'whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly

14

greater potential chance of success.'" *Barnett*, 121 A.3d at 540 (quoting *Stewart*, 84 A.3d at 707). "[J]udicial scrutiny of counsel's performance must be highly deferential", *Commonwealth v. Perry*, 128 A. 3d 1285, 1290 (Pa. Super. 2015), and "[c]ounsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Barnett*, 121 A.3d at 540 (quoting *Stewart*, 84 A.3d at 707).

At the PCRA hearing, Attorney Bayley testified as to his rationale for ultimately deciding not to file a suppression motion. Attorney Bayley explained that while he did consider filing a motion to suppress based on inadequate Miranda warnings, he ultimately determined that the good in the statement outweighed the bad. (T.P. PCRA Hearing, at 13). Attorney Bayley further stated that by not challenging the Petitioner's statement, if the Petitioner decided not to testify at trial, the jury would still hear what the Petitioner claimed to be a truthful and accurate version of events that occurred on the night of the crime. (*Id.* at 14-15). Attorney Bayley also explained that he considered the admission of the Petitioner's statement to be rendered less important than it otherwise might be, because he believed that the Commonwealth would be able to place the Petitioner at the scene of the crime "without any problem". (*Id.* at 15). Finally, Attorney Bayley testified that another beneficial aspect of Petitioner's statement was that:

15

It showed cooperation as well. There could be an argument made from a defense standpoint that people who cooperate and give statements are potentially more likely to be innocent, that would not be an uncommon theory to propose in some form to a jury.

(*Id.* at 18).

As noted above, this Court must exercise great deference when assessing counsel's performance. *Perry*, 128 A.3d at 1290. Attorney Bayley's testimony at the PCRA hearing indicates to this Court that trial counsel had a reasonable basis for deciding not to file a suppression motion. Accordingly, Petitioner's instant claim for ineffectiveness fails the second *Pierce* prong.

**ii.**      **Failure to file a Motion to Suppress Petitioner's statement to the police on the basis that Petitioner had been arrested without probable cause at the time he made the statement.**

In the instant case, Petitioner avers that Attorney Bayley was ineffective for failing to file a Motion to Suppress Petitioner's statement to the police on the basis that petitioner had been arrested without probable cause at the time he made the statement. (Petitioner's PCRA Brief, at 10).

**a. Arguable Merit**

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540. Moreover, counsel will not be deemed ineffective for failing to file a

16

Motion to Suppress where the "grounds underpinning the suppression motion or objection are without merit". *Ransome*, 402 A.2d at 1381-82.

Here, Petitioner avers that this claim could establish cause for relief through his argument that the police lacked probable cause to effectuate his arrest. (Petitioner's PCRA Brief, at 10). Accordingly, the question of whether the instant claim has arguable merit rests on a determination of whether or not probable cause existed at the time of arrest.

Both the Federal Constitution and the Pennsylvania Constitution serve to protect citizens from unreasonable searches and seizures. *See* U.S. Const. Amend. IV; Pa. Const. art. I, § 8; *Commonwealth v. Chase*, 960 A.2d 108, 112-13 (Pa. 2008) (citing *In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001)). "The key question in determining if a seizure is constitutional under the Fourth Amendment is if it is reasonable." *Chase*, 960 A.2d at 113 (internal citations omitted). Evidence obtained from unreasonable, illegal seizures is inadmissible and must be suppressed. *Commonwealth v. Key*, 789 A.2d 282, 290 (Pa. Super. 2001).

Investigative detentions and custodial detentions are two types of encounters between police and citizens that constitute a seizure of a person. *See Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000); *see generally Commonwealth v. Lovette*, 450 A.2d 975 (Pa. 1982). Investigative detentions carry "an official compulsion to stop and respond, but the detention is temporary, unless

17

it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000) (citations omitted).

"[A] custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." *DeHart*, 745 A.2d at 636. To effectuate a warrantless arrest, the police must have probable cause to believe both (1) that a crime has been committed and (2) that the person being arrested was the person who committed it. *Commonwealth v. Clark*, 735 A.2d 1248 (Pa. 1999). This standard is more stringent than reasonable suspicion. *Ranson*, 103 A.3d at 77. Probable cause exists when the facts and circumstances within the knowledge of the officer is sufficient to warrant an officer of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth. v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005) (citations omitted). A totality of the circumstances analysis is required to determine whether an officer had either reasonable suspicion to detain or probable cause to arrest. *Commonwealth. v. Myers*, 728 A.2d 960, 962 (Pa. Super.1999).

18

At the PCRA Hearing, when questioned about why he did not file a Motion to Suppress on the Petitioner's behalf based on Petitioner being arrested without probable cause, Attorney Bayley testified:

> I believed then and believe now there was probable cause to arrest him. So, I didn't identify any issues that I believed had any merit or would advance his case. The other thing I reviewed was the search warrant. I didn't see any viable issues with regard to attacking the search warrant.

(T.P. PCRA Hearing, at 21). When questioned whether he believed probable cause existed when only one out of five individuals identified Petitioner, Attorney Bayley testified:

> I think all it would take was one to make probable cause. And, the other interesting thing about identification that the one witness made, it wasn't your routine identification where the first time the person had ever seen Shauf or the perpetrator was while the crime was being committed and then the police came up with a suspect, gave them a photo array and all of a sudden he connects the person from the actual crime scene. This was a situation where the one witness had actually seen Shauf previous to the crime and remembered him from being in a bar or a restaurant and been pointed out to him by, I believe, Erika beard who had previously been associated with Mr. Shauf.
>
> So, this was a situation. It wasn't just a two-point identification where he's seeing the perpetrator during the crime and during the photo array. It's a situation where, it's a three-point identification. He's seeing him previously [sic] at the time of the crime and during the photo array.

19

(T.P. PCRA Hearing, at 22-23). Further, Attorney Bayley indicated that while the four other individuals in the residence on the night of the murder could not pick the Petitioner out of a line up, all four individuals did give physical descriptions pertaining to one of the perpetrators of the murder that were roughly accurate when compared to the Petitioner. (*Id.* at 26).

This Court is persuaded that the one witness identification of the Petitioner, and the four witness' descriptions that were roughly accurate when compared to the Petitioner was sufficient to warrant an officer of reasonable caution in the belief that the suspect has committed or is committing a crime. *Thompson*, 985 A.2d at 931. Therefore, the grounds underpinning a potential Motion to Suppress the Petitioner's statements to the police on the basis of lack of probable cause to arrest Petitioner were meritless. Accordingly, Petitioner's instant claim for ineffectiveness has no arguable merit, thereby failing the first *Pierce* prong.

iii. **Failure to file a Motion to Suppress the search warrant for Petitioner's home and vehicle on the basis that (1) it failed to provide a nexus between the homicide the police were investigating and the places to be searched and (2) it failed to disclose facts bearing on the unreliability of the identification of Petitioner.**

In the instant case, Petitioner avers that Attorney Bayley was ineffective for failing to file a Motion to Suppress the search warrant for Petitioner's home and vehicle on the basis that (1) it failed to provide a nexus between the homicide the police were investigating and the places to be searched and (2) it failed to disclose

20

facts bearing on the unreliability of the identification of Petitioner. (Petitioner's PCRA Brief, at 11).

### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540. Moreover, counsel will not be deemed ineffective for failing to file a Motion to Suppress where the "grounds underpinning the suppression motion or objection are without merit". *Ransome*, 402 A.2d at 1381-82. Here, Petitioner avers that this claim could establish cause for relief through his argument that the search warrant for Petitioner's home and vehicle (1) failed to provide a nexus between the homicide the police were investigating and the places to be searched and (2) failed to disclose facts bearing on the unreliability of the identification of Petitioner. (Petitioner's PCRA Brief, at 11).

Under both the Federal Constitution and Pennsylvania Constitution, a totality of the circumstances analysis is required to determine whether probable cause exists for the issuance of a search warrant. *See* U.S. Const. Amend. IV; Pa. Const. art. I, § 8; *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985) (adopting the standard set forth in *Illinois v. Gates*, 462 U.S. 213 (1983)). Under a totality of the circumstances analysis, the task of the issuing authority is:

21

> [S]imply to make a practical, common-sense decision whether, given all the circumstances, set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Smith*, 784 A.2d 182, 185 (Pa. Super. 2001) (quoting *Commonwealth v. Coleman*, 769 A.2d 462, 464 (Pa. Super. 2001) (internal citations omitted)). "However, if a search warrant is based on an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid." *Commonwealth v. Clark*, 602 A.2d 1323, 1325 (Pa. Super. 1992) (citations omitted). "To succeed in attacking a warrant, a defendant must come forward with 'allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *See Commonwealth f. Gomolekoff*, 910 A.2d 710, 715 (Pa. Super. 2006) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

In the instant case, a search warrant was executed on Petitioner's residence and his vehicle. Petitioner first argues that Attorney Bayley was ineffective for failing to file a Motion to Suppress the search warrant, because the search warrant failed to provide a nexus between the homicide the police were investigating and the places to be searched. (Petitioner's PCRA Brief, at 11).

At the PCRA Hearing, Attorney Bayley agreed with PCRA counsel that there must be a nexus between the crime being investigated and the place being

22

searched. (T.P. PCRA Hearing, at 27). Attorney Bayley explained why he believed the search warrant was supported by probable cause:

> He is identified as a suspect and I believe that the search warrants provide probable cause that he was involved in the situation . . . And, that is enough, I believe, under the circumstances to search his house the next day and his vehicle that's sitting right next to it.

(*Id.* at 29-30). Attorney Bayley also indicated, when questioned on cross-examination, that he did not believe it was unusual for the police to execute a search warrant on a suspect's residence in the hopes of locating a murder weapon when a weapon was used in the commission of a murder, and further noted that it thought it would be unusual if the police acting differently. (*Id.* at 40).

Review of the search warrant indicates that it included information that the Petitioner was recognized by one of the witnesses as one of the two suspects to enter the residence on the night of the murder, "as he knew him to be associated with a female named Erica whom had been to the residence in the past." (Search Warrant, October 23, 2012, at 2). The search warrant also provided that:

> On [the day after the incident giving rise to the instant case] information was developed that Jason C. Shauf resided at 117 Sollenberger Road in Chambersburg. A check of the residence revealed that a vehicle associated with and registered to Jason C. Shauf . . . was parked in the driveway of said residence.
>
> A neighbor reported seeing Jason C. Shauf and Carl Varner at 117 Sollenberger Road in the early morning hrs of this same date.

23

(*Id.*). Under a totality of the circumstances analysis, the information contained in the search warrant, in tandem with the testimony provided by Attorney Bayley, persuade this Court that there was a nexus between the homicide the police were investigating and the places to be searched. Therefore, the Court concludes the first basis raised by Petitioner in support of his argument that Attorney Bayley was ineffective for failing to file a suppression motion regarding the search warrant—that it failed to provide a nexus between the homicide the police were investigating and the places to be searched—is meritless.

The Court is likewise persuaded that the second basis Petitioner argues should have led Attorney Bayley to file a Motion to Suppress of the search warrant—that the search warrant failed to disclose facts bearing on the unreliability of the identification of Petitioner—lacks arguable merit. In support of the instant issue, Petitioner points to the fact that only one of the five witnesses present at the residence on the night of the murder identified Petitioner as one of the two suspects. However, at the PCRA hearing, Attorney Bayley testified that while Petitioner is correct that only one witness positively identified Petitioner as a suspect, the other four witnesses gave descriptions matching the Petitioner. (T.P. PCRA Hearing, at 30-32). Attorney Bayley continued, explaining that the four witnesses:

[C]ouldn't identify him from the standpoint of having seen him before knowing who he was. I think negative information would be if you have four other witnesses saying, suspect number 2 was somebody else, identified him as entirely being some other individual as opposed to just simply not knowing his name or having seen him before.

(*Id.* at 31).

It is true that a search warrant is rendered invalid if it is based on "an affidavit containing deliberate or knowing misstatements of material fact". *Clark*, 602 A.2d at 1325. However, the Court, like Attorney Bayley, is not persuaded that the search warrant's failure to indicate that there were five witnesses, and only one witness identified Petitioner, rises to the level of "deliberate or knowing misstatements of material fact", *id.*, or "allegations of deliberate falsehood or reckless disregard for the truth", *Gomolekoff*, 910 A.2d at 715 (quoting *Franks*, 438 U.S. at 171). Accordingly, Petitioner's second basis raised in support of his instant ineffectiveness claim lacks arguable merit, thereby failing the first *Pierce* prong.

iv. **Failure to file a Motion to Suppress a witness identification based on an overly suggestive photo array.**

In the instant case, Petitioner avers that Attorney Bayley was ineffective for failing to file a Motion to Suppress a witness identification based on an overly suggestive photo array. (Petitioner's PCRA Brief, at 14).

25

## a. **Arguable Merit**

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540. Moreover, counsel will not be deemed ineffective for failing to file a Motion to Suppress where the "grounds underpinning the suppression motion or objection are without merit". *Ransome*, 402 A.2d at 1381-82. Here, Petitioner avers that this claim could establish cause for relief through his argument that the photo array whereby the witness identified Petitioner was overly suggestive. (Petitioner's PCRA Brief, at 14).

"A pictorial identification is unduly suggestive when it gives rise to a substantial likelihood of irreparable misidentification." *See Commonwealth v. Hughes*, 555 A.2d 1264, 1272 (Pa. 1989). In the instant case, the witness who ultimately identified Petitioner as one of the intruders was shown two sets of photo arrays. Prior to having been shown either set of photos, but after the murder occurred, the witness was interviewed by the Chambersburg Police. The witness described two suspects, and indicated that he was familiar with the first suspect, but did not know his name. After having been shown the first photo array which included Petitioner, the witness indicated that he did not recognize anyone related to the incident, but did state that the first suspect was thinner and did not have

26

facial hair. Later on that same date, the witness was shown a second photo array that included a more recent photo of Petitioner than the first photo array. The witness pointed to Petitioner's photo in this second photo array, and indicated that was one of the murder suspects, and specifically the man he had previously indicated he was familiar with.

At the PCRA hearing, as noted above, Attorney Bayley testified that he did not believe there was a reasonable possibility that the District Attorney could not place Petitioner at the house at the time the crime occurred. (T.P. PCRA Hearing, at 34). Consequently, Attorney Bayley explained that he planned on conceding that Petitioner was present in the house at the time of the murder. (*Id.* at 35). When questioned about the manner in which the photo array was shown to the witness, Attorney Bayley also testified:

> And, I remember vividly, when I first looked at the photo array, the initial photo array that the witness was provided, where he couldn't identify Shauf, when I first looked at that photo array, I could not clearly pick Mr. Shauf out of that photo array and that—and I looked at that photo array shortly after being face to face with Mr. Shauf at the prison. And, there is something about that first photo array in—his picture in that first photo array that is just—it was not a good likeness of him at the time and in fact the second photo array I looked at, that interestingly the victim identified him in, I picked him out right away. And, I don't know what the difference was.
>
> I remember he had facial hair in the first one, but there were other differences. I myself couldn't pick him out.

27

So, I was not surprised that the victim couldn't pick him out.

(*Id.* at 23-24).

Given Attorney Bayley's testimony, and the fact that the witness who identified Petitioner had previous familiarity with him, this Court is not persuaded that the photo array was overly suggestive. Therefore, the grounds underpinning the suppression motion are meritless. Accordingly, Petitioner's instant ineffectiveness claim lacks arguable merit, thereby failing the first *Pierce* prong.

**B. Petitioner's Claims Regarding Attorney Kope's Ineffectiveness**

Attorney Kope entered his appearance in November of 2013, taking over Petitioner's legal representation from Attorney Bayley. Attorney Kope represented Petitioner during his jury trial.

**i. Failure to move that Juror Number 2 be stricken for cause.**

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to move that Juror Number 2 be stricken for cause. (*See* Petitioner's PCRA Brief, at 6). Prior to opening statements at trial, Juror Number 2 advised the Court that she remembered Petitioner because she and her husband had hired and paid him to complete a roofing job which he never finished. (T.P. Trial, Day 1, December 8, 2014, at 4-9). Consequently, the following questioning occurred:

28

[Court] Now, the question I would ask you, ma'am, is after considering this fact, would you still be able to sit as a fair and impartial juror in this case?

[Juror] I think I would be able to. That's in the past. Whether or not what he's accused of he did, I would only make a fair decision after hearing all information.

. . .

[Attorney Kope] [J]ust to repeat, in a different way the question by the Judge—would that affect your ability to judge his credibility or are you going to have a bias toward his credibility and think, He's [sic] just not telling the truth because of what had happened to us?

[Juror] I pray I wouldn't. I don't think I would because I want to be fair. I just want to listen to the facts from all parties even Mr. Shauf, you know, before I would make a decision. That's in the past. I harbor no ill feelings.

. . .

[Attorney Kope] I understand. And so when you say you don't think you could, I mean, you believe you could listen to his version and judge him based on what he says and his credibility at the time he says it. Do you feel you can do that without any bias?

[Juror] I feel like I could. I feel like I could.

(*Id.*).

### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540. Pursuant to Article I, Section 9 of the Pennsylvania Constitution and the 6th

Amendment of the United States Constitution, the criminally accused are explicitly granted the right to an impartial jury. "[C]laims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony." *Commonwealth v. Ellison*, 902 A.2d 419, 424 (Pa. 2006). However, disclosure of possible conflicts does not automatically require juror disqualification. As stated by the Pennsylvania Supreme Court "[t]he test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor." *Commonwealth v. Koehler*, 36 A.3d 121, 143 (Pa.2012) (internal citations omitted). The decision of whether to excuse a juror is within the discretion of the trial court, and is subject to review only for an abuse of discretion. *Id.* at 144.

In *Koehler*, an alternate juror informed the court that she may have previously encountered the defendant approximately one year before the trial. *Id.* at 143. Upon the Court's inquiry as to the juror's ability to serve fairly, the juror initially indicated that she was uncertain about her ability to serve impartially. *Id.* However, after additional questions, the juror concluded this encounter would not affect her ability to be a fair and impartial juror. *Id.*

30

In the case at bar, like the juror in *Koehler*, Juror Number 2 responded that she believed she would be able to serve impartially. (*See* T.P. Trial, day 1, at 4-9). Consequently, this Court is not persuaded by Petitioner's argument that trial counsel should have requested the juror's excusal, rendering the instant claim of ineffectiveness void of arguable merit. Petitioner therefore fails the first *Pierce* prong as to his IAC claim for trial counsel's failure to request Juror Number 2's excusal from trial.

### ii. Failure to object to improper character testimony describing Petitioner as violent.

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to improper character testimony describing Petitioner as violent. (*See* Petitioner's PCRA Brief, at 15). At trial, the Commonwealth called Erica Beard, Petitioner's former girlfriend, as a witness. On cross-examination by Attorney Kope, Ms. Beard provided the following testimony:

> [Q]. Now, also during this second interview with Detective Mummert, do you believe or do you remember—excuse me—telling the detective that you've never seen Jason with guns or known him to have guns?
>
> [A]. No. I've not known or seen him with a gun ever.
>
> . . .
>
> [Q]. Now, also during that same conversation, you had told the detectives that you would never expect Jason to shoot anyone; is that correct?

31

[A]. That is correct.

(*See* T.P. Trial, Day 3, December 10, 2014, at 26-27). During re-direct, the Commonwealth asked Ms. Beard the following questions:

[Q]. Did you know [Petitioner] to be violent?

[A]. I mean, we had physical altercations when we were in a relationship.

[Q]. Did you ever know him to get into fights with other people?

[A]. Yes.

(*See id.* at 34). Attorney Kope did not object to this line of questioning.

### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540. Under the Pennsylvania Rules of Evidence, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a). Moreover, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(2). "This rule of evidence encompasses the principle that, 'Generally, evidence of prior bad acts or unrelated

32

criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity." *See Commonwealth v. Nypaver*, 69 A.3d 708, 716 (Pa. Super. 2013) (quoting *Commonwealth v. Ross*, 57 A.3d 85, 98 (Pa. Super. 2012) (quoting *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483(2009))). However, a litigant may "open the door" to such inadmissible evidence; "[a] litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *See Nypaver*, 69 A.3d at 716.

Here, through his questions regarding whether Ms. Beard had seen the Defendant with guns or known the Defendant to own guns, Attorney Kope opened the door to the line of questioning pursued by the Commonwealth on redirect, as these questions related to the Defendant's character or trait for violence. Consequently, Attorney Kope was not ineffective for failing to thereafter object to the Commonwealth's questions. Petitioner therefore fails the first *Pierce* prong as to his IAC claim for trial counsel's failure to object to character testimony describing Petitioner as violent.

### b. **Reasonable Basis**

Even were this Court to find arguable merit in this particular ineffectiveness claim, the claim fails the second *Pierce* prong of reasonable basis. As set forth previously, the decisions made by trial counsel will be deemed

33

"reasonable if they effectuated his client's interests." *Barnett*, 121 A.3d at 540 (quoting *Stewart*, 84 A.3d at 707).

During the PCRA hearing, Attorney Kope indicated that:

> [P]art of our trial strategy with Mr. Shauf was that he was known—and I believe in one of the officers had said this to him, but he was known to use his fist in altercation, not weapons and he's not known to have guns and things of that nature. . . . that if he ever got into fight, he never used a weapon. That was the theory.

(T.P. PCRA Hearing, at 74). Moreover, this Court must exercise great deference when assessing counsel's performance. *Perry*, 128 A.3d at 1290. To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Attorney Kope's testimony at the PCRA hearing indicates to this Court that trial counsel had a reasonable basis for deciding not to object to the respective character testimony. Accordingly, Petitioner's instant claim for ineffectiveness fails the second *Pierce* prong.

iii. **Trial counsel's decision to elicit testimony suggesting Petitioner had a propensity for violence, including testimony that Petitioner had a Protection from Abuse ("PFA") entered against him where no such order existed.**

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his decision to elicit testimony suggesting Petitioner had a propensity for violence, including testimony that Petitioner had a PFA entered against him where no such order existed. (*See* Petitioner's PCRA Brief, at 17).

34

### a. **Arguable Merit**

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner avers that trial counsel "elicited testimony from Petitioner which indicated that PFA order was entered against him at the time of this incident [when i]n fact, no such order was ever in place nor could it have been as the individual who was supposed [sic] protected party had no relation to Petitioner." (Petitioner's PCRA Brief, at 17). However, Petitioner fails to offer any legal authority supporting his claim that trial counsel's questioning was inappropriate. (*See generally*, Petitioner's PCRA Brief). In contrast, the Commonwealth highlights Attorney Kope's testimony at the PCRA hearing, that even though no PFA was filed against Petitioner at the time of the incident, that it was important to offer the jury a description of Petitioner's perception at the time—that he believed he could not be on the street based on a PFA. (Commonwealth's Brief, at 13; see also T.P. PCRA Hearing, at 79).

Petitioner has therefore failed to establish that the instant claim has any arguable merit. Accordingly, the claim is dismissed.

### b. **Reasonable Basis**

35

Were this Court to find arguable merit in the instant claim, Petitioner still fails the second *Pierce* prong of reasonable basis. As set forth previously, the decisions made by trial counsel will be deemed "reasonable if they effectuated his client's interests." *Barnett*, 121 A.3d at 540 (quoting *Stewart*, 84 A.3d at 707).

At the PCRA Hearing, Attorney Kope explained that he felt it important to offer to the jury a reason for Petitioner parking his truck on a street other than the street the residence where the murder occurred was located; Attorney Kope further expressed his concern that simply telling the jury that the Petitioner parked where he did as a result of street congestion was "too flimsy" of an explanation. (T.P. PCRA Hearing, at 79).

Moreover, Petitioner has failed to cite any authority by which this Court would be persuaded that trial counsel had no reasonable basis as a result of the above noted testimony. The Court notes that, pursuant to case law issued by the Pennsylvania Supreme Court, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (quoting *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011)).

For the above noted reasons, Petitioner has failed to meet the second *Pierce* prong. Accordingly, the instant IAC claim is dismissed.

### iv. Failure to object to irrelevant and inadmissible testimony about Petitioner's past drug use.

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to irrelevant and inadmissible testimony about Petitioner's past drug use. (*See* Petitioner's PCRA Brief, at 18).

#### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner asserts that at trial, testimony concerning Petitioner's previous use of illegal drugs was presented to the jury numerous times. (Petitioner's PCRA Brief, at 18-19). Petitioner specifically argues:

> [T]estimony regarding past drug use is not admissible "unless the party offering such evidence can specifically tie it to the charged conduct." *Commonwealth v. Chapman*, 763 A.2d 895 (Pa. Super. 2000). It is inadmissible because it has a prejudicial effect of creating an image in the minds of jurors that Petitioner is a "bad person." *Id.*

(Petitioner's PCRA Brief, at 19). When offering the above rationale in *Commonwealth v. Chapman*, the Superior Court of Pennsylvania quotes the lower court's opinion which cites to Rule 404 of the Pennsylvania Rules of Evidence,

37

relating to character evidence and crimes or other acts. *Chapman*, 763 A.2d at 902.

The Pennsylvania Supreme Court has also weighed in on Pa.R.E. Rule 404:

> While evidence of prior bad acts is inadmissible to prove the character of a person in order to show conduct in conformity therewith, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

*Commonwealth v. Busanet*, 54 A.3d 35, 60 (Pa. 2012) (citing Pa.R.E. Rule 404(b)(2)).

Given applicable case law, this Court is persuaded that trial counsel could have objected to the testimony, as it is not clear how the testimony was tied specifically to the murder in the instant case. Accordingly, Petitioner has established the instant claim has arguable merit.

### b. **Reasonable Basis**

Having concluded the instant claim has arguable merit, Petitioner must also demonstrate the second *Pierce* prong—that trial counsel had no reasonable basis for his actions or lack thereof at trial. Petitioner avers that trial counsel has no reasonable basis for failing to object to trial testimony concerning Petitioner's illegal drug use. (Petitioner's PCRA Brief, at 18-19).

38

At the PCRA Hearing, Attorney Kope gave the following answers the

questions concerning his failure to object to the testimony concerning Petitioner's

previous use of illegal drugs:

> [Q]. Other things that you didn't raise objections to, such as drug use by Mr. Shauf?
>
> [A]. Yes. I think one of the witnesses had said that she—against, I don't remember exactly. I think she said she had thought she had seen—I don't know if it was Carl or Jason using drugs or cocaine that evening or it if was a previous occasion. Again, I didn't find that significant enough at the time because our whole trial strategy, because he was drinking with Carl Varner before they went over there. And, I think Carl Varner may have at one point said they were using drugs. Again, it wasn't significant enough to me to raise an objection to.
>
> [Q]. So, you didn't think the—let's put it this way. If you had objected to the fact that he had previously used drugs, do you think that was objectionable? In other words, if you had raised an objection that it would have been a sound objection that the Court would have considered?
>
> [A]. I really don't know. I mean, is it something you could ultimately object on? You can object on anything that you feel is—I mean, we've all been in trials where you have an attorney that objects to every little thing that comes up. I tend to, if it's not significant or if I felt its harmless to our strategy, I won't object to it.
>
> . . .
>
> Not everybody can foresee every little thing that a witness may say and just I tend not to object to every little thing, draw all the more attention to the issue. And quite franklin, you know, it breaks up the course of the

39

case to standup and object to every, you know, thing that could be objectionable. So, quite often, if it doesn't effect our overall strategy of the case or what we are trying to accomplish, I will often not object to things that I feel are just not significant enough to warrant it.

(T.P. PCRA Hearing, at 76-78).

While this Court may agree that it would have been proper for trial counsel to object to the testimony concerning Petitioner's illegal drug use, this Court must exercise great deference when assessing counsel's performance. *Perry*, 128 A.3d at 1290. To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Consequently, Petitioner has failed to persuade this Court that there existed no reasonable basis for trial counsel's failure to object to the testimony concerning Petitioner's illegal drug use. Accordingly, the instant claim is dismissed for failure to meet the second *Pierce* prong.

v. **Failure to object to the admission of photographs of the homicide victim while he was still living and the use of those photographs in the Commonwealth's closing argument where the photographs were not relevant and introduced for the purpose of engendering sympathy for the victim.**

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to the admission of photographs of the homicide victim while he was still living and the use of those photographs in the Commonwealth's closing argument where the photographs were not relevant and

40

introduced for the purpose of engendering sympathy for the victim. (*See* Petitioner's PCRA Brief, at 19).

At trial, the Commonwealth introduced photographs of the victim while he was still living. Trial counsel did not object to the admission of these photographs, and they were thereafter displayed during the testimony of one of the victim's friends, Augustin Marcias Marquez,[10] and during the Commonwealth's summation to the jury.

### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner avers that the introduction of the photographs of the victim was improper, as the victim's character and physical abilities were not at issue, thereby rendering trial counsel's assistance ineffective due to his failure to object to the photographs' introduction at trial. (Petitioner's PCRA Brief, at 19-21).

It is well settled that the "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial

---

[10] The record indicates that the photograph was shown at the end of Mr. Marquez's direct testimony, and the Commonwealth asked the witness if the victim had had family that lived in the United States, and if he missed the victim. (T.P. Trial, Day 1, December 8, 2014, at 156).

41

court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (internal citations omitted). Moreover, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record." *Id.* (internal citations omitted). "The trial court will not be found to have abused that discretion unless the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors." *Commonwealth v. Rivers*, 644 A.2d 710, 716 (Pa. 1994).

During the guilt phase of a murder trial, certain "life-in-being testimony" is admissible, to show that the victim was alive prior to the murder. *Commonwealth v. Jordan*, 65 A.3d 318, 333 (Pa. 2013). However, the Pennsylvania Supreme "Court has made clear, however, that the manner of presenting life-in-being evidence is subject to some restraints." *Id.* (citing *Rivers*, 644 A.2d at 716). In *Commonwealth v. Rivers*, the Pennsylvania Supreme Court provided that while photographs of the victim may be admissible when the "victim's character and physical abilities are called into question", that photographs "introduced for the purpose of engendering sympathy for the victim with the intent of creating an atmosphere of prejudice against the defendant . . . is error." *Rivers*, 644 A.2d at 716.

As the victim's character and physical abilities were not at issue, this Court finds Petitioner has demonstrated the instant claim's arguable merit.

### b. **Actual Prejudice**

As the victim's character and physical abilities were not at issue, this Court finds Petitioner has demonstrated the instant claim's arguable merit.

While this Court may agree with Petitioner that the instant claim has arguable merit, Petitioner must also demonstrate actual prejudice resulted from counsel's inadequate performance. *See Pierce,* 786 A.2d at 213. A petitioner demonstrates prejudice where he proves that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Spotz,* 84 A.3d 294, 315 (Pa. 2014) (quoting *Commonwealth v. King,* 57 A.3d 607, 613 (Pa. 2012)). "To properly determine whether prejudice resulted from the quality of counsel's representation, we must focus on counsel's overall trial strategy and view his performance as a whole." *Hull,* 982 A.2d at 1026 (quoting *Weiss,* 606 A.2d at 443). The Pennsylvania Supreme Court has further explained the difference:

> This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story,* states that "[w]henever there is a *'reasonable* possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden

43

on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel.

*Spotz*, 84 A.3d at 315 (quoting *Gribble*, 863 A.2d at 472) (internal citations omitted).

In this instance, Petitioner cites *Rivers* for its reference to the "atmosphere or prejudice" that may be created by photographs of the victim while still alive. (Petitioner's PCRA Brief, at 20-21). However, after finding that admission of the photograph of the decedent prior to death was improper, the *Rivers* Court then considered whether the error was harmless:

> An error is harmless when the Commonwealth can establish "that the evidence of guilt was so overwhelming, and the error ... so insignificant by comparison, that the error was harmless beyond a reasonable doubt." *Story*, 476 Pa. at 417, 383 A.2d at 169. In *Story*, the Commonwealth had introduced two photographs of the victim, one of which depicted him with his wife and their crippled daughter. The widow was called as a witness to identify the photographs and she went on at great length to describe for the jury how the victim's death had devastated the lives of her and her daughter.

44

> In the instant case the photograph was identified by the decedent's daughter, who merely related when and where the photograph was taken and verified that it was an accurate depiction of her mother immediately prior to her death. The testimony surrounding the photograph in this case was limited. Further, the actual polaroid snapshot of the victim does not portray her as particularly old or frail . . . .. Although admission of the photograph was clearly improper and irrelevant, in light of the overwhelming circumstantial evidence of the appellant's guilt, we conclude that the error was harmless.

*Id.* At 716. Like *Rivers*, this Court finds that notwithstanding the photographs in question, the Commonwealth presented substantial evidence establishing Petitioner's guilt. (*See generally Commonwealth v. Shauf*, Opinion and Order, April 13, 2015 (denying Petitioner's Post-Sentence Motion that alleged the jury verdict was against the weight of the evidence)). Moreover, given the result reached in *Rivers*—that admitting photographs of the victims while alive was merely harmless error—in tandem with the higher burden imposed on a petitioner in demonstrating actual prejudice, Petitioner fails to persuade this Court that introduction of photographs of the victim while alive in the instant case actually prejudiced Petitioner.

For the above noted reasons, Petitioner has failed to meet the third *Pierce* prong. Accordingly, the instant claim is dismissed.

### vi. Failure to object to victim-impact testimony during the guilt phase of the trial.

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to victim-impact testimony during the guilt phase of the trial. (*See* Petitioner's PCRA Brief, at 21-22).

The Commonwealth issued the following line of questions from Juan Miguel Herrera Marquez:

> [Q]. He was your friend?
>
> [A]. In December, it would have been a year we knew each other that he came to live in the house.
>
> [Q]. How did you feel when you went to the bathroom and saw him there?
>
> [A]. I don't know. I didn't even know that he was in the house. I thought he was working. I thought somebody kill Arturo because Arturo was there in the house. When I saw him, he used to tell me he had a little girl. And you can just imagine.

(T.P. Trial, Day 1, December 8, 2014, at 130-31). The Commonwealth also elicited the following testimony from Augustin Macias Marquez:

> [Q]. Okay. Finally, Augustin, how long has you known Hugo before he was killed?
>
> [A]. Three years.
>
> [Q]. You were good friends?
>
> [A]. Yes. We were very good friends.

[Q]. And is that Hugo on the screen?

[A]. Yes.

[Q]. Did he have family that lived here in the United States?

[A]. I didn't know any family here.

[Q]. Okay. Do you miss him?

[A]. Yes.

[Q]. Thank you, that's all I have.

(T.P. Trial, Day 1, December 8, 2014, at 156).

### a. **Arguable Merit**

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner argues that trial counsel's assistance was rendered ineffective by his failure to object to victim-impact testimony during the guilt phase of the trial. (Petitioner's PCRA Brief, at 21-22). Petitioner cites *Commonwealth v. Jordan*, 65 A.3d 318, 333 (Pa. 2013), for the proposition that

47

"victim-impact testimony during the guilt phase of a homicide trial is irrelevant and inadmissible." (Petitioner's PCRA Brief, at 22).[11]

"As defined by our Sentencing Code, victim impact evidence is information concerning the victim and the impact the victim's death has had on the family of the victim." *Commonwealth v. Carson*, 913 A.2d 220, 237 (Pa. 2006) (citing 42 Pa.C.S. § 9711(a)(2)). In both *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003), and *Commonealth v. Rollins*, 738 A.2d 435 (Pa. 1999), the Pennsylvania Supreme Court considered the issue of victim impact testimony. In *Freeman*, the Court considered testimony that victim was a "peaceful" woman and that she was "nice" when she was in the witness's company; the Court reasoned:

> [W]e cannot determine that the line of inquiry was necessarily invalid, nor would we assume that an attorney intends the worst possible interpretation of an event. In any event, even assuming *arguendo* that this very brief, non-specific testimony that, prior to her murder, [the victim] was a "peaceful" woman, and that she was "nice" when she was in [the witness's] company constituted victim impact testimony, it was so fleeting and general that it cannot be said that it rendered the jury incapable of returning a fair and impartial sentencing verdict.

*Freeman*, 827 A..2d at 414. In *Rollins*, the Court provided:

---

[11] The Court notes that Petitioner cites "Commonwealth v. Jordan, 65 A.3d 318, 333 (Pa. 2013) (citing Robinson, supra)". Notwithstanding the impropriety in the citation—using supra in a case citation—and given the Court's own diligent review of the Petitioner's PCRA Brief, as well as the *Jordan* Opinion, this Court is unable to ascertain to what "Robinson, supra" refers. Therefore, the rationale provided above by this Court bears no reference to Robinson.

48

> Appellant raises the cursory argument that victim impact testimony was improperly admitted during the guilt phase of his trial. This argument is so sketchily presented that its contours are difficult to discern. Appellant apparently is reasoning that [the witness]'s brief comment during the guilt phase of trial that her son, who had witnessed the crime, is now afraid of toy guns, constitutes victim impact testimony. Even assuming *arguendo* that this comment constituted victim impact testimony, it was so fleeting that it cannot be said that it affected the outcome of this matter; thus, Appellant has failed to establish that he has been prejudiced.

*Rollins*, 738 A.2d at 447.

In the instant case, Petitioner has failed to demonstrate that the above noted testimony constitutes victim impact testimony; the Court notes that while the instant claim submitted by Petitioner is premised on the concept of victim impact testimony, he has not articulated what victim impact testimony is, or why this Court should be persuaded that the above noted testimony qualifies as such. Therefore, like the Pennsylvania Supreme Court in both *Freeman* and *Rollins*, this Court is not persuaded that the instant claim has any arguable merit. Accordingly, the instant IAC claim fails.

### b. **Reasonable Basis**

Even were Petitioner able to demonstrate that the instant claim has arguable merit, Petitioner must also demonstrate the second *Pierce* prong—that trial counsel had no reasonable basis for his actions or lack thereof at trial.

49

Here, Petitioner argues that "there are numerous ways [trial counsel] could have objected [to the testimony] without alienating the jury." (Petitioner's PCRA Brief, at 22). However, Petitioner fails to identify any such way. Moreover, Petitioner fails to provide any case law or other authority supporting his averments.

Furthermore, at the PCRA hearing, Attorney Kope was questioned regarding his failure to object to the above noted testimony. Attorney Kope explained that:

> I do remember the questioning by one of the victim's friend, I think he was at the residence about, you know, he thinks of his daughter, the victim's daughter or something and it makes him sad or something to that effect. But, again, going back to trial strategy, somebody died here. People are going to be sad that somebody died and friends, and roommates, and neighbors are going to be sad and they're going to think about their children. Again, our trial strategy is focusing on the fact that Mr. Varner did this, not [Petitioner]. And nor did [Petitioner] have any idea that Mr. Varner was going to go to these extremes. And that's where we focused our trial strategy.
> . . .
>
> Again, to interrupt the flow of the trial and to draw all the more attention to that issue when it's just really not significant enough to warrant an objection in my opinion.

(T.P. PCRA Hearing, at 95-96). As noted above, this Court must exercise great deference when assessing counsel's performance. *Perry*, 128 A.3d at 1290. To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Consequently, Petitioner has failed to persuade this Court that there existed no reasonable basis for trial counsel's failure to object to the testimony. Accordingly, the instant claim is dismissed for failure to meet the second *Pierce* prong.

### c. **Actual Prejudice**

For the sake of completeness, we will address the final *Pierce* prong. As noted previously, to show actual prejudice, a Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Spotz*, 84 A.3d at 315 (internal citations omitted).

Here, Petitioner merely asserts that "[w]hile the admission of such testimony can be deemed harmless in certain circumstances, trial counsel's failure to object to it cannot be deemed harmless in this case." (Petitioner's PCRA Brief, at 22). However, Petitioner fails to articulate how he was actually prejudiced by this testimony. Moreover, Petitioner has failed to cite any authority by which this Court would be persuaded that he was actually prejudiced as a result of the above noted testimony. As noted above, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (quoting *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011)).

51

For the above noted reasons, Petitioner has failed to meet the third *Pierce* prong. Accordingly, the instant IAC claim is dismissed.

### vii. <u>Failure to object to testimony from multiple police detectives offering a personal opinion as to the truthfulness and veracity of Petitioner's statement.</u>

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to testimony from multiple police detective offering a personal opinion as to the truthfulness and veracity of Petitioner's statement. (*See* Petitioner's PCRA Brief, at 22-23). Petitioner cites the following instances from Detective Mummert:

> [Commonwealth]. During the interview, was he asked whether he had been at 310 East King Street the evening prior?
>
> [Detective Mummert]. Yes, he was.
>
> [Commonwealth]. What was his response?
>
> [Detective Mummert]. Initialy, he denied any information or knowledge or any involvement or of an incident at 310 East King Street.
>
> [Commonwealth]. Was that immediate?
>
> [Detective Mummert]. From the very beginning of the interview, correct.
>
> [Commonwealth]. During the course of the interview, was he generally forthcoming?
>
> {Detective Mummert]. After about 10 or 15 minutes once he was advised of the severity of the incident and

52

what we were dealing with, he started to disclose some information.

[Commonwealth]. In general, can you generally describe his demeanor and behavior during the interview?

[Detective Mummert]. Excited, somewhat deceptive at the beginning and throughout. And as detectives would ask him things, he started to come up with ways to explain what it was tat we were interpreting from the evidence we and seen to that point.

. . .

[Attorney Kope]. Now, your response to one o the questions asked by [the Commonwealth] is that you in your opinion, Mr. Shauf did not appear shocked at the news of Hugo's death. Did I understand that correctly?

[Detective Mummert]. In my opinion?

[Attorney Kope]. Yes.

[Detective Mummert]. He feigned being shocked, acted.

(T.P. Trial, Day 3, December 10, 2014, at 72, 159). Petitioner cites the following

instance from Detective Baker:

[Commonwealth]. As I said, we had an opportunity to watch the interview [with Petitioner] yesterday. It appears you were frustrated at the time. What was the source of your frustration?

[Detective Baker]. I don't believe he was telling us the truth when asked questions.

[Commonwealth].Okay. Did it appear to you at that time as he was presented with more physical evidence that he had that he became a bit more forthcoming?

53

[Detective Baker]. Yes.

. . .

[Attorney Kope]. Would you categorize it that he became more truthful once he realized the event of the investigation or extent of what happened during the investigation?

[Detective Baker]. I believe he changed his story some. I don't know if it was totally truthful.

[Attorney Kope]. If Mummert, Detective Mummert had categorized Jason as becoming more truthful after he learned the extent of what happened, would you disagree with that?

[Detective Baker]. No. I would say he became more truthful than what he was initially.

. . .

[Commonwealth]. Attorney Kope asked you about what you thought about the truthfulness of what Jason Shauf told you. He said he never went upstairs. Do you recall that?

[Detective Baker]. Yes.

[Commonwealth]. Based upon the physical evidence and witness statements, did you believe that was truthful?

[Detective Baker]. No, I did not.

[Commonwealth]. He said he heard a bang. Back up when he was first advised that someone had died, describe his reaction to that.

[Detective Baker]. He animatedly said, Oh, my gosh.

54

[Commonwealth]. Did you believe that was a truthful reaction?

[Detective Baker]. Didn't come across that way to me.

[Commonwealth]. How did it come across to you?

[Detective Baker]. Staged or acted.

(T.P. Trial, Day 4, December 11, 2014, at 43, 51, 54).

### a. Arguable Merit

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner avers that trial counsel was ineffective as a result of his failure to object to testimony offering a personal opinion as to the truthfulness and veracity of Petitioner's statement. (Petitioner's PCRA Brief, at 22).

"Under Pennsylvania law, only evidence of a general reputation for truthfulness in the community is admissible as character testimony." *Commonwealth v. Smith*, 567 A.2d 1080, 1082 (Pa. Super. 1989). "Determinations of credibility, however, are exclusively the province of the jury." *Commonwealth v. Gallagher*, 547 A.2d 355, 357 (Pa. 1988).

Petitioner cites both *Smith* and *Gallagher*, averring:

55

> Opinion evidence with regard to the credibility of witnesses and statements is prohibited under Pennsylvania law. Credibility is a matter left solely to the finder of fact. Impermissible opinion testimony regarding credibility infringes on [sic] duty of the finder of fact to determine credibility and weigh the evidence.

(Petitioner's PCRA Brief, at 23 (internal citations omitted)).

Given the above noted testimony from both Detective Mummert and Detective Baker, the Court is persuaded that both Detectives offered testimony pertaining to the Petitioner's truthfulness. Accordingly, Petitioner has established the instant claim's arguable merit, satisfying the first *Pierce* prong.

### b. Actual Prejudice

To succeed on an IAC claim, a petitioner must demonstrate that he suffered actual prejudice as a result of counsel's questioned behavior. As noted previously, to show actual prejudice, a Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Spotz*, 84 A.3d at 315 (internal citations omitted).

Petitioner first cites *Gallagher*, for the proposition that testimony concerning the credibility of witnesses infringes on the duty of the jury to determine credibility and weigh the evidence. (Petitioner's PCRA Brief, at 23). Petitioner also cites *Smith*, averring that "Pennsylvania appellate courts in the past have found that the failure to object to improper testimony renders trial counsel ineffective and is

56

prejudicial to the accused because it invades the jury's 'sacred domain.'" (Petitioner's PCRA Brief, at 23).

However, while it is true that in both cases cited by Petitioner the Pennsylvania appellate courts determined the defendant was prejudiced by the questioned testimony, neither case created a per se rule of prejudice when such testimony occurs. Moreover, the instant case is factually distinguished from both *Smith* and *Gallagher*, where the challenged testimony was elicited from expert witnesses whose testimony was offered purely for the purpose of rendering an opinion as to truthfulness. *See Smith*, 567 A.2d at 1083 (providing that the expert witness' testimony concerning the child's character for telling the truth usurped the credibility determining function of the jury, and finding it improper for "an expert witness, or any witness for that matter, takes the witness stand and under the guise of 'rehabilitation' proceeds to testify as to the credibility of the child/witness." ); *Gallagher*, 547 A.2d at 356 (finding that an expert witness' testimony regarding the victim's affliction with 'rape trauma syndrome' was inadmissible, and reasoning that "the only purpose of the expert testimony was to *enhance the credibility* of the victim.") (emphasis in original). In contrast, the testimony of the detectives in the instant case focused on the investigative process; the testimony concerning truthfulness consisted of fleeting statements in the context of an eight

(8) day trial.[12] Therefore, Petitioner has failed to persuade this Court that it should deviate from the *Pierce* actual prejudice framework applied to IAC claims.

Furthermore, Petitioner has failed to articulate how he was actually prejudiced by the testimony in question. As noted above, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (quoting *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011)).

The factual disparity between the instant case and the two cases cited by Petitioner, in tandem with Petitioner's failure to demonstrate actual prejudice, leaves this Court to find that Petitioner has failed to meet the third *Pierce* prong. Accordingly, the instant IAC claim is dismissed.

### viii. Failure to object to numerous hearsay statements throughout the trial, including an out-of-court identification of Petitioner by an individual who did not identify Petitioner at trial.

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to numerous hearsay statements throughout the trial, including an out-of-court identification of Petitioner by an individual who did not identify Petitioner at trial. (*See* Petitioner's PCRA Brief, at 23-24).

---

[12] The Court notes that Detective Mummert began his testimony prior to the brief recess taken by this Court at 10:39 a.m. on December 10, 2014, and ran until the very end of that trial day, concluding at 5:08 p.m.; Detective Baker's testimony ran for a significant portion of the morning on Day 4, December 11, 2014, resulting in over twenty (20) transcript pages.

## a. **Arguable Merit**

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Petitioner cites two specific instances where he avers trial counsel should have objected. (Petitioner's PCRA Brief, at 23-24). First, Petitioner cites testimony given by Detective Mummert concerning Erika Beard and Petitioner; the following is an excerpt from Detective Mummer's testimony, including the statement alleged to have been hearsay by Petitioner:

> [Q]. So I want to take you back to the early stages of this investigation, sometime in the morning of October 23rd. You were led to Erika Beard directly by one of the residents who was in the house at 310 East King Street, correct?
>
> [A]. That's correct.
>
> [Q]. And she as interviewed—well, was she interviewd by you that morning or someone else?
>
> [A]. Myself and Detective Frisby spoke with her that morning in her living room.
>
> [Q]. And was she interviewed at a later date as well?
>
> [A]. She was.
>
> [Q]. And did she inform you that she did, in fact, know an individual named El Gallo, correct?

59

[A]. She did.

[Q]. And that she was familiar with the fact that El Gallo visited 310 East King Street, correct?

[A]. That's correct.

. . .

*[Q]. Do you recall Erika giving you any information that she would have received through a black male about Mr. Shauf having guns?*

*[A]. When I asked her if she knew Jason ever to possess any guns, she stated that she did not which is what she testified to this morning. But during our conversation, she referenced an incident that occurred some years ago with an unidentified male subject who she stated was a black male [sic] had told her some information concerning Mr. Shauf and a weapon.*

T.P. Trial, Day 3, December 10, 2014, at 114-16). In his brief, Petitioner refers only to the end of this excerpt. (Petitioner's Brief, at 23-24) (referring to the italicized portion of the above excerpt).

For the second instance, the Court notes that Petitioner fails to refer to a particular statement he considers to be hearsay; rather, Petitioner vaguely cites a two page expanse of testimony, and avers that: "Detective Mummert was asked about an out-of-court identification of Petitioner made by one of the witnesses at his preliminary hearing. The witness was not able to identify Petitioner at trial." (Petitioner's PCRA Brief, at 24). The Court presumes Petitioner refers to the following testimony:

[Q]. January 9th, 2013, you did attend that preliminary hearing, correct?

[A]. Yes.

[Q]. And were you present in the courtroom when Augustin on that day in court identified Mr. Shauf?

[A]. Yes.

(T.P. Trial, December 10, 2014, at 126-127). Petitioner does not offer argument, or provide any case law or authority as to why the Court should consider this line of questioning hearsay.

Under the Pennsylvania rules of Evidence, hearsay evidence is generally inadmissible at trial unless it falls within a recognized exception. *See* Pa.R.E. 802; Carson, 913 A.2d at 254 (Pa. 2006). Hearsay is defined as an out of court statement "offer[ed] in evidence to prove the truth of the matter asserted". *See* Pa.R.E. 801(c). The Superior Court of Pennsylvania has explained:

> "Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." *Commonwealth v. Bracero,* 528 A.2d 936, 939 (Pa. 1987) (citations omitted). For these reasons, our Supreme Court "has long adhered to the principle that the use of hearsay evidence is to be discouraged, and [the] policy against its use is generally recognized as particularly strong." *Heddings v. Steele,* 514 Pa. 569, 526 A.2d 349, 351 (1987) (footnote omitted).

*Commonwealth v. Thomas*, 908 A.2d 351, 354 (Pa. Super. 2006). However, "it is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." *Chmiel*, 889 A.2d at 532.

In *Chmiel*, the appellant argued that testimony offered by a trooper at trial was hearsay evidence which therefore should not have been admitted at trial. (*Id.* at 533). The Pennsylvania Supreme Court reasoned:

> A review of the testimony reveals that Trooper Gaetano referred to statements he had taken from Martin and recounted the steps taken in the investigation and the information that accumulated. The nature of the testimony was limited to the course of conduct because it provided the jury with a complete picture of the investigation and did not go beyond what was reasonably necessary to explain this conduct. We agree with the trial court that the course-of-conduct testimony was particularly appropriate because defense counsel had attacked the adequacy of the police investigation.

*Id.* Ultimately, the Court held that the trooper's testimony regarding the course of conduct of the investigation was properly admitted at trial. *Id.* at 534.

Here, the Court is not persuaded that the statements made by Detective Mummert were offered for the truth of the matter asserted. Like *Chmiel*, the statements offered by Detective Mummert at trial were offered for the purpose of explaining the investigation process. The similarity between the instant case and

62

*Chmiel* is further underscored by Petitioner's attempt at trial to challenge the integrity of the police investigation. *See supra* IX. FAILURE TO OBJECT TO MULTIPLE STATEMENTS IN THE DISTRICT ATTORNEY'S CLOSING ARGUMENT DESIGNED TO APPEAL TO THE EMOTIONS OF THE JURY RATHER THAN SUGGESTING A DISPASSIONATE REVIEW OF THE FACTS OF THE CASE.

Consequently, the statements were properly admitted at trial. Accordingly, Petitioner has failed to demonstrate the first *Pierce* prong, and the instant IAC claim is dismissed.

### ix. Failure to object to multiple statements in the District Attorney's closing argument designed to appeal to the emotions of the jury rather than suggesting a dispassionate review of the facts of the case.

In the instant case, Petitioner avers that Attorney Kope was ineffective as a result of his failure to object to multiple statements in the District Attorney's closing argument designed to appeal to the emotions of the jury rather than suggesting a dispassionate review of the facts of the case. (*See* Petitioner's PCRA Brief, at 24-25).

The following is a portion of the Commonwealth's closing argument that Petitioner contends was improper:

> There's three kinds of people in the world. In my military experience, I've heard a lot of illustrations I think this is useful today. There's three types of people. First are sheep. It's about 98 percent of the population.

63

I don't know all of you personally. I suspect most, if not all of you, are sheep. That's not a pejorative term at all. It's someone who has a prosocial behavior, who lives their lives to benefit others, to stay peaceful, mind their own business, do their job, support their friends and family, keep their nose clean, don't have much interaction with criminals and evil. Most people, about 98 percent.

There's 1percent who are wolves. They prey on the sheep. That's either something that law enforcement has to deal with or the military. There's 1 percent out there whose jobs in their minds is to prey on the sheep, someone weaker and not prepared to meet the challenge, defend themselves.

Thankfully, there's another 1 percent. Sheepdogs. The sheepdogs' job is to protect the sheep. They fight the wolf. They're kind of similar sometimes—and they have to be—in the sense the violence the wolf brings to the sheep has to be met with violence to meet that, right? The difference between the two is right here. It's integrity, and it's morality.

I saw a picture once of a man, a Port Authority officer. He was standing on ground Zero on September 11th, 2001. He's covered in dust. And he has three civilians around him all covered in dust. You look at his face. You can't find his face on the Internet. I was shown his face in the context of this illustration. Abject fear. Not a movie. It's not an actor. Look at the fear. It's abject fear.

He's been up n the tower one, two, three times already. Ground Zero, New York. September 11th. People he just hustled out of the building. People jumping out on fire, smoke everywhere. He's been up there three times in the tower. Back down. Covered in dust.

That was after his third trip in the building. He went in a fourth time. He didn't come out. He didn't do that because he was tough, masculine, full of testosterone. That officer did that out of love, out of love for the sheep, for the flock, for the morality involved in that.

It is disgusting for these two, both of them, to denigrate this community's police officers and say they planted evidence so we could happen to pin a murder on someone. It's disgusting.

If you want to believe cops planted evidence in this case for some reason to nail these two for some vendetta they may have for some reason, acquit them.

(T.P. Trial, Day 8, December 17, 2014, at 118-20).

### a. <u>Arguable Merit</u>

As noted above, to establish a meritorious ineffectiveness claim, Petitioner must first establish that her claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" *Barnett*, 121 A.3d at 540.

Here, Petitioner argues that the Commonwealth "on numerous occasions referred to the [Petitioner] and his co-defendant in a derogatory fashion, called the line of argument made by trial counsel 'disgusting' and improperly referred to the September 11, 2001 terrorist attacks." (Petitioner's PCRA Brief, at 25). Petitioner submits that the above actions were improper, rendering trial counsel's assistance ineffective as a result of his failure to object. (*Id.*).

The Pennsylvania Supreme Court has provided, in pertinent part:

65

> It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury, and must be free to present arguments with "logical force and vigor." Counsel may comment upon "fair deductions and legitimate inferences from the evidence presented during the testimony." Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, arguments from personal opinion as to the guilt of the accused are not proper. Moreover, not every remark by the prosecutor, even assuming it is intemperate or uncalled for, requires a new trial. A prosecutor's comments do not amount to reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."

*Commonwealth v. Chamberlain*, 30 A.3d 381, 407-08 (Pa. 2011) (internal citations omitted). "A prosecutor does not engage in misconduct when his statements are based on the evidence or made with oratorical flair. Additionally, a prosecutor must be permitted to respond to arguments made by the defense." *Carson*, 913 A.2d at 237.

Here, Petitioner has failed to persuade this Court that the Commonwealth's closing argument went beyond passionate rhetoric. Rather, the rhetoric relating to September 11th, in the context of the rest of the Commonwealth's closing argument, was a discussion that referred to the significant job police officers undertake when they are on the clock; this was the Commonwealth's response to the Petitioner's trial strategy of insinuating that the police had planted evidence.

For the above noted reasons, Petitioner has failed to demonstrate the first *Pierce* prong. Accordingly, the instant IAC claim is dismissed.

### b. **Reasonable Basis**

Even were Petitioner able to demonstrate that the instant claim has arguable merit, Petitioner must also demonstrate the second *Pierce* prong—that trial counsel had no reasonable basis for his actions or lack thereof at trial.

Here, Petitioner asserts that trial counsel's failure to object to the Commonwealth's closing argument renders trial counsel's assistance ineffective. (Petitioner's PCRA Brief, at 24-25). Petitioner further submits that trial counsel had no reasonable basis for failing to object to the Commonwealth's closing argument. (*Id.*).

At the PCRA hearing, Attorney Kope was questioned regarding his failure to object to the above noted statements made by the Commonwealth:

> I feel like the feel the Judge in every trial makes an effort to instruct the jury that their feelings about any particular attorney, that any passionate argument that the attorney makes, it's not the controlling issue. The controlling issue is their recollection of the facts and their application of the facts. And so, I as a standard rule do not object to closing arguments or opening arguments. Man, many attorneys, and good attorneys, and good district attorneys will make passionate arguments, opening and closing and I typically don't object to that. .
>
> . . .
>
> Because I do the same thing.
>
> . . .

> I do not and would not—I did not and would not object to that argument made by Mr. Fogal or any other district attorney in their closings or openings for the reasons I've stated.

(T.P. PCRA Hearing, at 93-95). As noted above, this Court must exercise great deference when assessing counsel's performance. *Perry*, 128 A.3d at 1290. To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Attorney Kope's testimony at the PCRA hearing indicates to this Court that trial counsel had a reasonable basis for deciding not to object to the respective character testimony. Accordingly, Petitioner's instant claim for ineffectiveness fails the second *Pierce* prong.

## II. Claims of Violations of Constitutional Violations

Also among the statutory factors from which a conviction or sentence may have resulted creating an entitlement to post-conviction relief is a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States. 42 Pa. C.S. §9543(a)(2)(i). Such a violation must have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.*

In the instant case, Petitioner argues that Juror Number 2 was presumably biased against him. (Petitioner's PCRA Brief, at 3-6). Petitioner further argues

68

that "[b]ecause Juror No. 2 was seated on the Petitioner's jury, his conviction was the result of a violation of both the United States and Pennsylvania Constitutions." (*Id.*).

As noted previously, prior to opening statements at trial, Juror Number 2 advised the Court that she remembered Petitioner because she and her husband had hired and paid him to complete a roofing job which he never finished. (T.P. Trial, December 8, 2014, at 4-9). Ultimately, Juror Number 2 responded that she believed she would be able to serve impartially. (*See* T.P. Trial, day 1, at 4-9).

As discussed thoroughly above, Petitioner has failed to demonstrate that Juror Number 2's excusal from trial was constitutionally required. *See supra* SECTION I. FAILURE TO MOVE THAT JUROR NUMBER 2 BE STRICKEN FOR CAUSE. Petitioner's recitation of his Sixth Amendment and Article, Section 9 rights is not questioned by this Court. (*See* Petitioner's Brief, at 4). However, Petitioner has failed to provide any authority or case law on the specific issue alleged by which this Court could be guided; Petitioner himself even acknowledges that "[t]here is admittedly very little case law regarding this specific issue of a criminal defendant on an unrelated crime that is a crime of dishonesty being seated on that defendant's jury". (Petitioner's PCRA Brief, at 4). Significantly, the Court notes that Petitioner further fails to reconcile his argument with rationale provided by the Pennsylvania Supreme Court in Koehler. Koehler, 36 A.3d at 143 ("The test for

determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor.).

As noted above, the decision of whether to excuse a juror is within the discretion of the trial court, and is subject to review only for an abuse of discretion. *Id.* at 144. This Court finds that Petitioner has failed to demonstrate violation of his constitutional rights warranting a new trial. Accordingly, the instant claim is dismissed.

## CONCLUSION

After careful and diligent review, the Court finds that in each claim alleging IAC, Petitioner has failed to meet the three pronged test provided in *Pierce*. This Court also finds Petitioner has failed to demonstrate a constitutional violation warranting post-conviction relief. Pursuant to the attached Order, Petitioner's PCRA Petition is DENIED.